# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| MARK STEPHEN ERLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:09-CV-88-TLS |
| | ) | |
| ROY DOMINGUEZ, Sheriff, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

When the Plaintiff, who is proceeding *pro se* in this matter, filed a Prisoner Complaint [DE 1] pursuant to 42 U.S.C. § 1983, he was a pretrial detainee confined at the Lake County Jail. He has alleged that Lake County Sheriff Roy Dominguez and agents of Robert Malizzo and Danita Hughes violated his federally protected rights while he has been confined at the jail. His Complaint contains nine numbered claims, including allegations that the Defendants violated rights protected by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and rights protected by Indiana's Constitution and the jail's inmate handbook.

## THE APPLICABLE REVIEW STANDARD

A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Pursuant to 28 U.S.C. § 1915A(a), the Court must review the merits of a prisoner complaint. Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss it (or any portion of it) if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint (or any portion of a complaint) for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as they do when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). A plaintiff's complaint "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief' that is also sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs., Inc.,* 536 F.3d 663, 667 (7th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and Fed. R. Civ. P. 8(a)(2)). The Supreme Court recently summarized the applicable standards:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> . . . [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal,* --- U.S. ----, ---- - ----, 129 S.Ct. 1937, 1949–50 (2009) (quotation marks and

citations omitted).

## A.     STATE LAW CLAIMS

The Plaintiff brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (stating that, to state a claim under 42 U.S.C. § 1983, the plaintiff must allege that a "government official, acting under color of state law, deprived [him] of a right secured by the Constitution or laws of the United States"). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The Plaintiff's claims that the defendants' actions violated provisions of Indiana's Constitution and the jail's inmate handbook state no claims upon which relief can be granted under § 1983.

## B.     CONFRONTATION BY THE MEDIA AND VICTIM'S FAMILY

In his first claim, the Plaintiff alleges that Sheriff Dominguez "allowed the media and [his victim's] family inside the jail facility for the purpose of confronting plaintiff. The media was allowed to capture video and photos of plaintiff from within the jail facility unlawfully and without his consent." (Compl. 3.) According to the Complaint, this occurred in the jail's booking area on August 26, 2008, the day the Plaintiff arrived at the facility. He alleges that this act

violated the Fourth Amendment's Unreasonable Searches and Seizures Clause and the Fourteenth Amendment's Due Process Clause.

The Supreme Court has observed that "[i]nmates in jails, prisons, or mental institutions retain certain fundamental rights of privacy; they are not like animals in a zoo to be filmed and photographed at will by the public or media reporters . . . ." *Houchins v. KQED, Inc.,* 438 U.S. 1, 5 n.2 (1978). Under *Houchins*, the media does not have a First or Fourteenth Amendment right to enter the jail, go where they will, and take photographs without limitation. *First Defense Legal Aid v. City of Chi.*, 319 F.3d 967, 968, 971 (7th Cir. 2003). The activities of Sheriff Dominguez, as alleged by the Plaintiff, have Fourth Amendment unreasonable search and seizure and Fourteenth Amendment due process implications that require consideration of the government conduct, the harm or disability suffered, and the government's interest. *See Demery v. Arpaio*, 378 F.3d 1020, 1027–33 (9th Cir. 2004) (holding that sheriff's policy and placement of webcams in a pretrial detention center that made images available on the Internet constituted punishment of pretrial detainee in violation of the Fourteenth Amendment due process protection, which prohibits all punishment of pretrial detainees); *Caldarola v. County of Westchester*, 343 F.3d 570, 574–76 (2d Cir. 2003) (stating that a pretrial detainee has a privacy interest in not having his "perp walk" broadcast to the public and holding that a legitimate "perp walk" does not violate the Fourth Amendment when it serves the government's legitimate interest in informing the public about its efforts to enforce the law that the defendant was charged with violating and does not overstep the bounds of reasonableness); *Lauro v. Charles*, 219 F.3d 202, 209–14 (2d Cir. 2000) (finding that staged "perp walk" violated pretrial detainee's Fourth Amendment right to be free from unreasonable seizures). Giving the Plaintiff the benefit of the inferences to which

he is entitled at this stage, the Court finds that the Complaint states a plausible claim for relief regarding the encounter with the media and the victim's family.

## C.    PLACEMENT IN ADMINISTRATIVE SEGREGATION

In his second and fourth claims, the Plaintiff asserts that his placement in administrative segregation on "suicide observation" when he first arrived at the jail violated the Fourteenth Amendment's Due Process Clause. According to the Complaint, the jail's "usual practice involves placing certain high profile inmates arriving at the jail into suicide observation for up to 30 days. Low profile inmates normally only spend 72 hours on suicide observation." (Compl. 4.) He alleges that he spent eleven days on suicide watch when he first arrived at the jail. In his second claim, he states that Sheriff Dominguez is responsible for the policy that resulted in him being placed on temporary suicide observation. In his fourth claim, he asserts that Defendant Hughs "is responsible for the operations of Edgewater Systems, a for profit private company contracting with the jail to provide on site psychological services to inmates." (Compl. 7.) He alleges that "Defendant Hughs and her agents in concert with Defendant Dominguez and his agents are responsible for the actions taken against Plaintiff" placing him into suicide observation. (*Id.*) In addition to claiming violations of constitutional prohibitions against unusual punishments, unnecessary rigor, and due process, the Complaint alleges that the Plaintiff had not had disciplinary problems, had not exhibited suicidal behavior, had not acted or verbalized an intent to harm others or himself, and had not been on suicide observation at the Fresno, California County Jail, where he had been in custody before being returned to Indiana. The Complaint also asserts that the only justification for this treatment was his notoriety and the

charges against him and that Sheriff Dominguez's agents used "safety and security" as a reason for keeping him apart from the general population. (Compl. 9.)

The state cannot, consistent with the Fourteenth Amendment's Due Process Clause, punish pre-trial detainees. *Bell v. Wolfish*, 441 U.S. 520, 534–35 (1979). However, maintaining jail security is an appropriate justification for placing restrictions on pretrial detainees. *Id.* at 540. The Supreme Court has instructed:

> Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial. . . . [I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.

*Id.* at 540. Because administrative segregation of a detainee for non-punitive reasons is not constitutionally prohibited punishment, it does not require the government to first provide due process protections. *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (stating that no due process is required if detainee is placed in segregation "not as punishment but for managerial reasons"); *Zarnes v. Rhodes*, 64 F.3d 285, 291–92 (7th Cir. 1995) (holding that placing detainee in administrative segregation for her protection and the protection of other inmates without due process did not violate the constitution). In *Higgs*, the court gave examples of non-punitive, managerial reasons that would justify placing a detainee in segregation: when the detainee requires protection from other prisoners or the staff requires protection from the detainee's violent propensities; when a detainee is considered a suicide risk; or when a cell in the segregation ward is the only one vacant when a detainee arrives at the jail. *Id.* "As long as the purpose was indeed a preventive rather than a punitive one, he would not be entitled to notice

and a hearing." *Id.*

The Plaintiff is alleging that he was placed in administrative segregation, not for a *bona fide* managerial reason such as the protection of others or suicide risk, but for punitive reasons related to his notoriety and the pending charges. Consequently, the Plaintiff's due process rights are implicated by this alleged treatment, and the Court will permit the Plaintiff to proceed with his Fourteenth Amendment due process claim against Sheriff Dominguez regarding his placement in administrative segregation.[1]

The Plaintiff's theory of liability against Defendant Hughs is more problematic. The Complaint does not allege conduct or personal involvement by Defendant Hughs in the alleged constitutional violation. The Complaint identifies Dr. Hughs as the director of Edgewater Systems, but it does not name Edgewater Systems as a defendant. The Complaint does claim conduct by her agents, who are not defendants in this action, and suggests that Defendant Hughs and her agents are responsible for somehow acting "in concert" with Sheriff Dominguez. Section 1983 creates a cause of action for damages based on personal liability, and a plaintiff must show a defendant's personal involvement or participation, or direct responsibility, for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir. 2000); *Moore v. State of Indiana*, 999 F.2d 1125,

---

[1] In his second, third, fourth, fifth, sixth, and seventh claims, the Plaintiff references the Eighth Amendment right against cruel and unusual punishments. However, the Eighth Amendment only applies to convicted prisoners, and thus it does not apply to the Plaintiff, who was a pretrial detainee. *Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 452 n.1 (7th Cir. 2009). Accordingly, the Plaintiff has stated no Eighth Amendment claim. Nevertheless, the same basic protection extends to pretrial detainees under the Fourteenth Amendment Due Process Clause, which the Court will apply (as invoked by the Plaintiff in his Complaint) in considering his claims.

1129 (7th Cir. 1993); *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir. 1971). The Supreme Court has recently observed that, "[b]ecause vicarious liability is inappropriate to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through that official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948. Under § 1983, Defendant Hughs cannot be held vicariously liable for the conduct of the unspecified agents of her and/or Edgewater Systems, and the Complaint fails to allege any personal involvement or participation in the alleged constitutional violations. Thus, the Complaint states no claim against Dr. Hughs because she is not responsible for the actions of Sheriff Dominguez or for her purported "agents" working at the Lake County Jail.

**D.      CONDITIONS OF CONFINEMENT**

In claims two, four, and five of his Complaint, the Plaintiff alleges that the conditions of confinement while under suicide observation violate rights protected by the Eighth Amendment's Cruel and Unusual Punishments Clause and the Fourteenth Amendment's Due Process Clause. In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by a defendant's actions. *Graham v. Conner*, 490 U.S. 386, 394 (1989). When the alleged violations occurred, the Plaintiff was at the jail as a pretrial detainee. The Eighth Amendment protects convicted prisoners from cruel and unusual punishments while rights of pretrial detainees derive from the Fourteenth Amendment's Due Process Clause. *Guzman v. Sheahan*, 495 F.3d 852, 856 (7th Cir. 2007) (citing *Wolfish*, 441 U.S. at 535 n.16). Nevertheless, the standards are considered to be analogous. *Id.* A violation of the Eighth Amendment's Cruel and Unusual Punishments Clause consists of two elements: (1)

objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991). The Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, and shelter. *Farmer*, 511 U.S. at 832. Deliberate indifference is the equivalent of criminal recklessness, and thus the detainee must show more than negligence or even grossly negligent behavior. *Guzman*, 495 F.3d at 857. In other words, the detainee must show that the official knew that the detainee faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837 (stating that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety"); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008).

The Plaintiff alleges in his second claim that he was subjected to several harsh conditions while under suicide observation. He states that there was "fecal matter and urine flung on [the] walls and other surfaces" of his suicide observation cell. (Compl. 4.) He further alleges that the filthy state of his cell caused his open sores to become infected. (Compl. 5.) Placement in a cell smeared with feces for any length of time without an opportunity to clean the cell might state a claim under § 1983. *Johnson v. Felker*, 891 F.2d 136, 139 (7th Cir. 1989) ("Accepting [the prisoner's] claim as true, as we must at this stage of the proceedings, we are unable on this record to conclude with certainty that placing a prisoner in a cell for three days without running water and in which feces are smeared on the walls while ignoring his requests for cleaning

supplies and for the water to be turned on fall within the 'civilized standards, humanity, and decency' recognized in this circuit"). Giving the Plaintiff the benefit of the inferences to which he is entitled at this stage, his claim that fecal matter and urine were on his cell walls while he was on suicide observation is sufficient for him to go forward on this claim.

The Plaintiff alleges that, while he was under suicide watch for eleven days, he was subjected to "being stripped naked completely" and "gusting air conditioning." (Compl. 4.) The Plaintiff's claim regarding being stripped naked and subjected to gusting air conditioning sufficiently states a claim. *See Dixon v. Godinez*, 114 F.3d 640, 6443 (7th Cir. 1997) (stating that "[c]old temperatures need not imminently threaten inmates' health to violate the Eighth Amendment").

The Plaintiff claims that he was "fed an inappropriate diet consisting of: 2-jelly sandwiches (with almost no jelly) and a small milk for breakfast, for lunch and dinner 2 b[o]logna sandwiches and a milk." (Compl. 4.) Although the Plaintiff may have found these conditions to be unpleasant and uncomfortable, they fall short of denying him the minimal civilized measure of life's necessities, especially considering that they were of limited duration. Conditions that merely cause inconvenience and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Moreover, "conditions that would violate the Eighth Amendment over a long period of time may not constitute a constitutional violation if imposed for short periods of time." *Craft v. Mann*, 265 F. Supp. 2d 970, 972 (N.D. Ind. 2003) ("Denial of full nutritious meals for two days is insufficient to violate the Eighth Amendment's prohibition against cruel and unusual punishments."). Some of the conditions the Plaintiff complains of, such as the food he was

served for the eleven days he was under suicide observation, might violate the Fourteenth Amendment if imposed for a long period of time. However, the conditions of which the Plaintiff complains are not sufficiently serious to derive him of the "minimal civilized measure of life's necessities," especially considering that this alleged deprivation lasted for only eleven days. A diet that temporarily fails to meet some prescribed dietary requirements "is the type of risk many encounter voluntarily," and "exposure to it in moderate levels 'is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual.'" *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (quoting *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993)).

The Plaintiff claims he was denied opportunities "to bathe," "use soap for handwashing," and "brush [his] teeth." (Compl. 4.) The Plaintiff further alleges that he was only allowed to bathe on Monday, Wednesday, and Friday, but that inmates in the general population may shower daily. As noted above, conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108–09 (7th Cir. 1971). The Constitution does not require penal facilities to provide daily showers for prisoners. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). Furthermore, a denial of soap, toothbrush, and toothpaste for a ten-day period, without an allegation of physical injury, does not state an Eighth Amendment claim. *Harris v. Fleming*, 839 F.2d 1232, 1234–36 (7th Cir. 1988). The Plaintiff does not allege that he suffered any actual harm from not showering daily, not having soap for handwashing, or not brushing his teeth. Accordingly, these conditions, under an objective standard, are not sufficiently serious to deprive him of the minimal civilized measure of life's necessities, and the allegations state no claim upon

which relief can be granted.

In his fifth claim, he states that "Defendant Dominguez is responsible for Plaintiff's continuing punitive conditions of confinement," (Compl. 8), and that Sheriff Dominguez's agents "use safety and security" as a reason for keeping him apart from the general population in continuing administrative segregation, (Compl. 9). He alleges that in the administrative segregation unit where he is currently housed, he is subject to "constant video monitoring inside his cell with no justification." (Compl. 8.) The Supreme Court has stated:

> A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. We strike the balance in favor of institutional security, which we have noted is central to all other corrections goals. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

*Hudson v. Palmer*, 468 U.S. 517, 527–28 (1983) (quotation marks and citations omitted).

Similarly, the Seventh Circuit has opined:

> Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After *Wolfish* and *Hudson* monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory. . . . Vigilance over showers, vigilance over cells—vigilance everywhere, which means that guards gaze upon naked inmates.
>     . . .
>     . . . Surveillance of prisoners is essential, as *Wolfish* establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections *Wolfish* held permissible. Guards do the surveillance.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995). Consequently, the Plaintiff has failed to state a claim regarding the video monitoring in his suicide observation cell.

The Plaintiff alleges that he is kept in his cell most of the day, only gets one hour of out-of-cell recreation, and is kept separate from other inmates during recreation while inmates in the general population have communal day rooms with television sets. A lack of exercise may rise to a constitutional violation in extreme and prolonged situations when movement is denied, muscles are allowed to atrophy, and an inmate's health is threatened. *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). However, the denial of "desirable, entertaining diversions . . . [do] not raise a constitutional issue." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988). That the Plaintiff received one hour daily of out-of-cell recreation shows that he was not restricted to a totally sedentary existence in his cell, and he does not allege that he suffered any deleterious consequences from this policy. Thus, the limitations on his choice of physical activities did not deny him the minimal civilized measure of life's necessities.

In several of his claims, the Plaintiff suggests that he was subjected to different conditions, privileges, and treatment as a result of Defendant Dominguez's decision to place him in administrative segregation, which is essentially a claim that the Defendants violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment directs that "all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). Additionally, "unequal treatment among inmates . . . is justified if it bears a rational relation to legitimate penal interests." *Williams v. Lane*, 851 F.2d 867 (7th Cir. 1988) (citing *Hudson v. Palmer*, 468 U.S. 517, 522–23) (1983)) Although courts have held that "inmates confined in a disciplinary segregation unit are not similarly situated with general population inmates," *see, e.g., Boyd v. Anderson,* 265 F. Supp. 2d 952, 966 (N.D. Ind. 2003), the

Court, giving the Plaintiff the benefit of favorable inferences regarding the treatment directed at him, will permit the Plaintiff to proceed with his Fourteenth Amendment equal protection claim against Sheriff Dominguez.


D.      **MEDICAL CLAIMS**

In his third claim, the Plaintiff alleges that he was denied adequate medical care for the eleven days he was on suicide observation. He states that "Defendant Robert Malizzo is the owner of Medstaff, a private for profit contractor contracted to provide inmate medical services to inmates in the jail on site." (Compl. 5.) He asserts that he had open cuts on his ankles when he arrived at the jail on August 26, 2008, and that by August 29 these cuts had become infected. He states that he "showed the [custody] staff the infected wounds and demanded immediate medical attention." (Compl. 5.) He says that officers responded by taking him to the shower, and then returning him to his cell where he was "told to lie on his stomach" and "force medicated with an injection to his buttocks." (*Id.*) Then, "not long after, the Dr. came and treated plaintiff by placing an ointment on plaintiff's wounds, but refused to place any coverings on the wounds" because the Plaintiff was on suicide watch. (*Id.*) The doctor also prescribed antibiotics for the infection.

The Plaintiff states that, in a letter dated January 26, 2009, long after he was removed from suicide observation, he "made defendant Malizzo aware of the forced medication, lack of timely medical treatment, and suicide watch without justification . . . . Defendant Malizzo has not responded to Plaintiff's letter to him." (Compl. 6.) The Plaintiff does not allege that Defendant Malizzo was personally involved in his treatment at the jail or that he was aware of

how the Plaintiff was being treated at the time. Rather, he alleges that because he later wrote to Defendant Malizzo, this Defendant became liable for his problems. In a similar case involving an inmate with a medical condition who claimed deliberate indifference, the Seventh Circuit stated:

> The assumption underlying this choice of defendants—that anyone who knew or should have known of his [jaw] condition, and everyone higher up the bureaucratic chain must be liable—is a bad one. Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.

*Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009) (citation omitted). In *Burks*, the court rejected a prisoner's "view that everyone who knows about a prisoner's problem must pay damages" because it "implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care." *Id.* at 595. Based upon the allegations in the Complaint, Defendant Malizzo had no personal involvement in treating the Plaintiff and cannot be held responsible for actions of his subordinates, even if the Plaintiff later wrote to him about what had happened.

Regarding the merits of the Plaintiff's claims, the Eighth Amendment requires the government to provide "'medical care for those whom it is punishing by incarceration.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). This protection safeguards prisoners against a lack of medical care that "'may result in pain and suffering which no one suggests would serve any penological purpose,'" and "'deliberate indifferent to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Id.* (quoting *Estelle*,

429 U.S. at 103, 104). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). An objectively serious medical need is one that has been diagnosed as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Williams*, 491 F.3d at 714; *Gutierrez,* 111 F.3d at 1373.

When the Plaintiff requested medical attention for his sores, the custody staff conveyed his request to the medical staff, and a jail doctor examined him, treated him, and prescribed antibiotics. The fact that a doctor saw an inmate and treated him by prescribing medications normally establishes lack of indifference to the inmate's medical problems. *Cf. Estelle*, 429 U.S. at 107. "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Although the Plaintiff may not have liked or fully agreed with the care he received from the doctor and staff, the Complaint shows that he received medical care for his sores, and thus he has not stated a cognizable due process claim as to his sores.

The Plaintiff also states that "medical staff was aware that plaintiff has injury with nerve damage to the L-5 region of his back that he takes medication for. For 11 days, without justification, plaintiff was forced to lie on a concrete slab without a mat[t]ress or cushion, during which plaintiff was caused needless pain and suffering." (Compl. 6.) This is a claim against Defendant Dominguez, not against Defendant Malizzo or the medical staff because they did not place the Plaintiff in administrative segregation or establish the conditions in administrative

segregation. Providing no mattress to sleep on, especially in conjunction with other conditions such as a floor covered with water, a broken toilet, and feces and blood smeared along the wall, can be enough to sustain a claim regarding deliberate indifference. *Cf. Vinning-El v. Long*, 482 F.3d 923, 925 (7th Cir. 2007) (per curiam). The Plaintiff alleges that no mattress was provided, and giving the Plaintiff the benefit of the inferences to which he is entitled at this stage and considering the other conditions he has alleged regarding the feces and urine, the gusting air conditioning, and the Plaintiff being stripped naked, the Court will permit the Plaintiff to go forward with his claim against Defendant Dominguez regarding his back injury and having to lay on a concrete slab for eleven days.

### E.        HARASSMENT BY OFFICER CALVERY

In his sixth claim, the Plaintiff asserts that a jail employee named "Calvery engaged in a pattern of harassment against the plaintiff." (Compl. 9.) This employee is not a defendant in this action. The Plaintiff asserts that Sheriff Dominguez and his agents "took no actions except to tell plaintiff that the matter had been taken care of and that verbal abuse does not violate plaintiff's rights." (*Id.*) According to the Compliant and attached materials, on January 3, 2009, Officer Calvery searched the Plaintiff's cell "under the pretense that some screws were missing from a hinge in plaintiff's cell door." (*Id.*) The Plaintiff alleges that Officer Calvery verbally abused him, left his property scattered around his cell, and then moved him to another cell with an intact door. He asserts that Sheriff Dominguez is responsible for this alleged violation of his Eighth Amendment and Fourteenth Amendment rights.

The Plaintiff has not alleged that Sheriff Dominguez was present at this search, that he

ordered it, or that he was personally involved in any way. As noted earlier, a prisoner in a § 1983 case may not recover damages from officials solely because of their supervisory positions under the theory of *respondeat superior*. In order to be liable for damages, an individual must have personally participated in or directed the alleged constitutional deprivation, or it must have occurred with his knowledge or consent. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Moreover, that the sheriff or his subordinates may have ignored or denied the Plaintiff's grievance dealing with the search does not violate his federally protected rights. *See Wilson v. VanNatta*, 291 F. Supp. 2d 811, 819 (N.D. Ind. 2003). "Only persons who cause or participate in the [constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d. 605, 609 (7th Cir. 2007) (citations omitted).

The Plaintiff has not named Officer Calvery as a defendant, but even if he had, the Complaint would state no valid claim against him. The Plaintiff complains that Officer Calvery verbally abused him, but the verbal abuse and harassment complained of here are not sufficient to state a claim under § 1983. *See Dobbey v. Ill. Dep't of Corrs.*, 574 F.3d 443, 445 (7th Cir. 2009) (affirming dismissal of an Eighth Amendment claim involving an officer who allegedly hung a noose in the sight of a prisoner, acknowledging that "a threat . . . can rise to the level of cruel and unusual punishment," but noting that a prompt investigation of the harassment was performed and no further trouble from the officer occurred). The Complaint alleges that the Plaintiff was told that the matter had been taken care of, and it does not appear that the problem persisted. Moreover, that Officer Calvery may have searched the Plaintiff's cell, even if he left property scattered about, states no Eighth or Fourteenth Amendment claim.

**F.      MAIL-RELATED CLAIMS**

In his seventh claim, the Plaintiff asserts that mail room Officers Stack and Wigsmden, citing jail mail room policy, withheld a publication, newspaper clippings, photographs, and addresses from him.[2] According to the Complaint, the officers told him "that he cannot have newspaper cuttings sent to him even if the news is about him. Even if these news stories are photocopied, plaintiff is denied. Officer Stack claims that newspapers, books and magazine[s] must come from the publisher, which is what the rule states." (Compl. 11.) He also alleges that jail policy does not allow him to receive magazines containing semi-nude photographs of women and that jail officials would not allow him to receive the addresses of "state agencies and medical licensing boards, which plaintiff's family sent to him at the jail." (*Id.* at 12.)

"'[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges or rights, a retraction justified by the considerations underlying our penal system.'" *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system." *Id.* Prisoners have a protected First Amendment right to receive information through the mail, including publications. *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007). Prison regulations that restrict a prisoner's First Amendment rights are permissible if they are reasonably related to legitimate penological interests, such as security. *Id.*

---

[2] The Plaintiff claims that these officers retaliated against him for filing a grievance about the handling of his mail. To state a claim for retaliation, a plaintiff must specify a retaliatory action, name the appropriate defendants, and assert a constitutionally protected activity, the exercise of which caused the retaliatory action. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Although prisoners are entitled to utilize available grievance procedures without threat of recrimination, *id.*, the Plaintiff here has not named the officers as defendants, and thus he fails to state a retaliation claim.

The Plaintiff alleges that Officer Stack denied him a publication sent to him by his family that included photographs of women, even though the cover "displayed no rear or frontal nudity, nor did they depict any real or simulated sex act." (Compl. 10–11.) Apparently, "the models were wearing G-string type garments." (Compl. 11.) He also alleges that Officer Stack did not allow him to receive photocopies of photographs. Giving the Plaintiff the benefit of the inferences to which he is entitled at this stage, the Court finds that the Complaint states a plausible claim for relief regarding the policy and the alleged violation of his First Amendment rights to receive materials.

The Plaintiff also alleges that jail officials would not allow him to receive newspaper clippings through the mail. A policy that prevents a prisoner from receiving newspaper and magazine clippings through the mail infringes on his First and Fourteenth Amendment liberty interest, and a general ban on receipt of clippings from noncommercial sources violates a prisoner's First Amendment rights. *Lindell v. Frank*, 377 F.3d 655, 659–60 (7th Cir. 2004). Prisons and jails may enforce a "publishers only" rule in regard to types of materials from noncommercial sources (such as books and magazines) that could easily conceal smuggled contraband. *Id.* at 658. However, this rule does not extend to clippings from magazines or newspapers. In *Lindell*, the Seventh Circuit noted that the prison had adopted a broad "publishers only" rule that allowed inmates to receive published materials only from a publisher or other commercial source and that the inmate alleged that this policy is unconstitutional in prohibiting him from receiving clippings or photocopies of published articles. *Id.* at 658. The Seventh Circuit determined that the "ban as currently applied to all clippings and copies violated Lindell's First Amendment rights." *Id.* at 660 (citing *Allen v. Coughlin*, 64 F.3d 77, 80–81 (2d

Cir. 1995)). Giving the Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, the Court finds that the Complaint states a plausible claim for relief that his First Amendment rights were violated when he was precluded from receiving these clippings.

The Plaintiff also alleges that the mail officers told him the jail's policy would not allow him to receive the addresses of state agencies and medical licensing boards through the mail. He asserts that they deemed this information to be contraband and returned it to his family. It is unclear what legitimate penological interests this policy might serve, and giving the Plaintiff the benefit of the inferences to which he is entitled at this stage, the Court finds that the Complaint states a plausible claim for relief that his First Amendment rights were violated when he was precluded from receiving these addresses.

Finally, the Plaintiff alleges that Officer Stack destroyed the magazine with the cover showing semi-nude models instead of returning it "to sender as required by jail mail procedure." (Compl. 11.) He further alleges that after he filed a grievance against her, Officer Stack "began to harass and retaliate against plaintiff." (*Id.*) The other allegations in this section of the Complaint allege that the mail room officers violated the Plaintiff's rights by applying the jail's policies, which implicates Sheriff Dominguez in his official capacity. However, the claims that Officer Stack acted contrary to policy by destroying a magazine and acted on her own to retaliate against him do not present official capacity claims against the sheriff. The Plaintiff has not named Officer Stack as a defendant, and he may not use the doctrine of *respondeat superior* to hold Sheriff Dominguez liable for Officer Stack's behavior in her individual capacity.

**G.     DEFAMATION**

In his eighth claim, the Plaintiff alleges that Sheriff Dominguez "is responsible for a false statement made to the Post Tribune, a local area newspaper, on February 12, 2009, and published on February 13, 2009. The newspaper was told that plaintiff went to court and pleaded guilty [of] a murder and was placed in suicide observation." (Compl. 13.) The Plaintiff asserts that the sheriff violated his Fourteenth Amendment rights by making this statement. Even if the Court were to assume that the facts alleged are all true, they state no federal cause of action against Sheriff Dominguez because defamation is not actionable under § 1983. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding that "the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law"); *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 262 (7th Cir. 1999).

## H.       MISHANDLING OF GRIEVANCES

In claim nine, the Plaintiff alleges that the grievance system at the jail is "dysfunctional and grievances that plaintiff filed were handled inappropriately." (Compl. 13.) The Plaintiff's claim that Sheriff Dominguez's agents did not properly deal with his grievances states no claim upon which relief can be granted. A prisoner has no due process rights with respect to the prison grievance procedures; in other words, he has no liberty or property interests in procedural protections. *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001). A ruling against a prisoner on an administrative complaint does not cause or contribute to a constitutional violation. *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). Accordingly, even if the Lake County Jail grievance system is dysfunctional and even if Lake County Jail officials may not have considered the Plaintiff's grievances or denied him access to the grievance system, these facts

would state no claim upon which relief can be granted.[3]

## CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS the Plaintiff leave to proceed against Defendant Rogelio Dominguez in his official and individual capacity for damages and in his official capacity for injunctive relief on his first claim; on the portions of his second claim regarding his placement in administrative segregation, his confinement for eleven days in a cell with fecal matter and urine on the walls, and his confinement in a naked condition with gusting air conditioning; on his equal protection claim regarding placement in administrative segregation; on the portion of his third claim alleging that he was forced to sleep on a concrete slab without a mattress or cushion for eleven days; and on the portion of his seventh claim alleging that jail policy precluded him from receiving a magazine with semi-nude photographs of women, newspaper cuttings, and addresses of government officials through the mail;

(2) DISMISSES all other claims and DISMISSES Defendants Robert Malizzo and Danita Johnson Hughs pursuant to 28 U.S.C. § 1915A(b)(1);

(3) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Defendant Dominguez respond to the Complaint as provided for in the Federal Rules of Civil Procedure;

---

[3] In claim nine, the Complaint focuses on exhaustion of administrative remedies, includes an array of allegations related to grievances filed by the Plaintiff, and attaches a number of related exhibits. Under the applicable standards, the Court has construed claim nine liberally to present a possible due process claim. As for exhaustion of administrative remedies, an inmate must exhaust available administrative remedies by completing all of the procedural steps of the prison grievance process before complaining in federal court about prison conditions. 42 U.S.C. § 1997e(a). However, an administrative remedy is deemed "unavailable" if prison or jail administrators fail to respond to properly filed grievances or otherwise use affirmative misconduct to prevent a prisoner from exhausting remedies. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

(4) DIRECTS the Marshals Service to effect service of process on Defendant Dominguez on the Plaintiff's behalf, and DIRECTS the Clerk of this Court to ensure that a copy of this Opinion and Order is served on him along with the summons and Complaint; and

(5) DENIES AS MOOT the Plaintiff's Motion [DE 17] filed on February 12, 2010.

SO ORDERED on February 18, 2010.

 S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION