# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

MARK STEPHEN ERLER,         )
                              )
       Plaintiff,         )
                              )
       v.                 )     CAUSE NO. 2:09-CV-88-TLS
                              )
ROGELIO DOMINGUEZ, Sheriff, *et al.*,  )
                              )
       Defendants.     )

## OPINION AND ORDER

Plaintiff Mark Stephen Erler, a prisoner currently confined at the Indiana State Prison who is proceeding pro se in this matter, filed his original Prisoner Complaint [ECF No. 1] pursuant to 42 U.S.C. § 1983 while he was a pretrial detainee confined at the Lake County Jail. The Court screened his Complaint pursuant to 28 U.S.C. § 1915A(a) and issued an Opinion and Order [ECF No. 18] dismissing several claims, dismissing Defendants Robert Malizzo and Danita Johnson Hughes, and allowing the Plaintiff to proceed against Lake County Sheriff Roy Dominguez on the following claims: that he was subjected to an improper "perp walk" when he arrived at the jail; that his due process rights were violated when he was placed on suicide watch immediately after his arrival at the jail; that he was confined for eleven days in a cell with fecal matter and urine on the walls in a naked condition with gusting air conditioning and forced to sleep on a concrete slab without a mattress or cushion; that his equal protection rights were violated while he was in administrative segregation; and that jail policy precluded him from receiving through the mail a magazine with semi-nude photographs of women, newspaper cuttings, and addresses of government officials.

The Plaintiff has filed an Amended Complaint [ECF No. 33] adding ten Defendants: Edgewater Systems, Inc.; Medstaff, Inc.; Psychiatrist Robbins; Mental Health Counselor

Barragan; Nurse T. Atkinson; Jail Warden Benny Freeman; Deputy Warden J. Malenshek; Lieutenant Ratajczak; and Correctional Officers T. Wigsmoen and Stack. The Plaintiff also "requests John Doe Defendants 12 through 22." (ECF No. 33 at 3.) The Plaintiff alleges that the Defendants violated rights protected by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. This matter is before the Court pursuant to its statutory screening obligation. *See* 28 U.S.C. § 1915A.

## APPLICABLE REVIEW STANDARD

A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Pursuant to 28 U.S.C. § 1915A(a) and (b), the Court must review the merits of a prisoner complaint and must dismiss the complaint (or any portion of it) if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts apply the same standard under § 1915A as they do when addressing a motion under Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of a complaint when it fails to state a claim upon which relief can be granted. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). A plaintiff's complaint "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief' that is also sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs., Inc.,* 536 F.3d 663, 667 (7th Cir. 2008) (quoting *Bell Atl. Corp.*

*v. Twombly,* 550 U.S. 544, 555 (2007), and Fed. R. Civ. P. 8(a)(2)). The Supreme Court has summarized the applicable standards:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> . . . [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949–50 (2009) (quotation marks and citations omitted).


## DISCUSSION

### A.      Fifth Amendment Claims

The Plaintiff brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States and that a person acting under color of state law

committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (stating that, to state a claim under 42 U.S.C. § 1983, the plaintiff must allege that a "government official, acting under color of state law, deprived [him] of a right secured by the Constitution or laws of the United States").

In Paragraphs Eight, Nine, and Ten of his Amended Complaint, the Plaintiff asserts that the Defendants' actions violated the Due Process Clause of the Fifth Amendment. These allegations state no claim upon which relief can be granted because the Fifth Amendment's Due Process Clause relates only to the federal government and its agencies. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Andrews v. Consol. Rail Corp*. 831 F.2d 678, 683 (7th Cir. 1987) (affirming the district court's dismissal of the plaintiff's Fifth Amendment claim because Conrail was neither an agency nor an entity of the federal government); *Craig v. Cohn*, 80 F. Supp. 2d 944, 947 (N.D. Ind. 2000) (stating that the "Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials"). The Court will address the Plaintiff's due process claims under the Due Process Clause of the Fourteenth Amendment, which applies to the states.


**B.      Fourth and Eighth Amendment Claims**

In Paragraphs Two, Three, Four, Five, Six, Seven, Eight, Nine, and Ten of his Amended Complaint, the Plaintiff alleges that the Defendants' actions violated the Fourth Amendment prohibition against unreasonable searches and seizures. In Paragraphs Two, Three, Four, Five,

Six, and Ten of his Amended Complaint, he alleges that the Defendants' actions violated the Eighth Amendment prohibition against cruel and unusual punishments. He also asserts in each of these paragraphs that the Defendants' actions violated the Due Process Clause of the Fourteenth Amendment.

In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by a defendant's actions. *Gossmeyer v. McDonald*, 128 F.3d 481, 490 (7th Cir. 1997) (citing *Graham v. Conner*, 490 U.S. 386, 394 (1989), and *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994)). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Seventh Circuit has instructed that the scope of a Fourth Amendment claim is typically "limited up to the point of arraignment, at which point the prosecution is underway." *Bielanski v. County of Kane*, 550 F.3d 632, 638 (7th Cir. 2008); *see also Graham*, 490 U.S. at 395 (stating that events occurring "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment"). The Eighth Amendment protects inmates (i.e., convicted prisoners) from cruel and unusual punishments while the rights of pretrial detainees derive from the Due Process Clause of the Fourteenth Amendment. *Guzman v. Sheahan*, 495 F.3d 852, 856 (7th Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

With the exception of the "perp walk" claim in Paragraph Eight, all of the alleged violations of the Plaintiff's rights occurred after he was booked into the jail and confined there as a pretrial detainee (ECF No. 33 at 1). The record is not clear as to when the Plaintiff was arraigned. Consequently, the Plaintiff states no claims under the Eighth Amendment; instead, his

rights would arise under the Fourteenth Amendment. Although the Court will dismiss the Eighth Amendment claims, the standards for the Eighth and Fourteenth Amendments are the same, and an act or practice that violates the Eighth Amendment also violates the Fourteenth Amendment due process rights of pretrial detainees. *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988).

The Court will dismiss the Plaintiff's Fourth Amendment claim in Paragraph Ten because it does not implicate any interest protected by the Fourth Amendment and involves conduct alleged to have occurred on September 6, 2008, which is well after he would have been arraigned. The Plaintiff's other Fourth Amendment claims raise some privacy concerns that seem to relate to the Plaintiff's Fourteenth Amendment conditions of confinement claims. In the end, these claims may not implicate any interest protected by the Fourth Amendment, but these questions can be addressed as the case goes forward.

### C. Confrontation by the Media and Victim's Family

In his original Complaint, the Plaintiff alleged that Sheriff Dominguez "allowed the media and [his victim's] family inside the jail facility for the purpose of confronting plaintiff. The media was allowed to capture video and photos of plaintiff from within the jail facility unlawfully and without his consent." (ECF No. 1 at 3.) The Court construed this claim as asserting that the Plaintiff was subjected to an improper "perp walk" while he was being escorted into the jail, and the Court allowed him to proceed on this claim. In Paragraph Eight of his Amended Complaint, the Plaintiff re-states his claim that the "perp walk" staged by jail officials on August 26, 2008, violated the Fourth Amendment's ban on unreasonable searches and seizures. (ECF No. 33 at 12–13.) The Court reaffirms its conclusion in its original screening

Opinion and Order that, "[g]iving the Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, the Court finds that the Complaint states a plausible claim for relief regarding the encounter with the media and the victim's family." (ECF. No. 18 at 4–5.)

**D.      Placement on Administrative Segregation on Suicide Watch**

In his original Complaint, the Plaintiff complained that his placement in administrative segregation on "suicide observation" for eleven days when he first arrived at the jail violated the Fourteenth Amendment's Due Process Clause. In its original screening Opinion and Order, the Court found that the original Complaint alleged "that he was placed in administrative segregation, not for a *bona fide* managerial reason such as the protection of others or suicide risk, but for punitive reasons related to his notoriety and the pending charges." (ECF No. 18 at 7.) The Court concluded that "the Plaintiff's due process rights are implicated by this alleged treatment, and the Court will permit the Plaintiff to proceed with his Fourteenth Amendment due process claim against Sheriff Dominguez regarding his placement in administrative segregation" on suicide watch. (ECF No. 18 at 7.)

In Paragraphs Two and Three of his Amended Complaint, the Plaintiff re-alleges this claim, asserting that "Defendant Barrigan, an employee of Edgewater Systems, Inc. working as mental health counselor at the Lake County Jail," decided to have him placed on suicide watch (ECF No. 33 at 5), and that "Defendant Robbins, an employee of Edgewater Systems, Inc., working as a psychiatrist at the Lake County Jail," improperly acquiesced in the Plaintiff's placement on suicide watch (ECF No. 33 at 5–6). Thus, the Plaintiff re-alleges his claim that jail officials, Defendants Robbins and Barragan, placed him in administrative segregation on suicide

watch without bona fide reasons. The Court reaffirms the conclusion it reached in its original

screening Opinion and Order that his claims relative to being placed on suicide watch state a

claim upon which relief can be granted under the Due Process Clause of the Fourteenth

Amendment.

**E.      Conditions of Confinement on Suicide Watch**

In his original Complaint, the Plaintiff alleged that the conditions of confinement he

endured while under suicide observation constituted cruel and unusual punishment. The Court

allowed him to proceed on some of these claims under the Due Process Clause of the Fourteenth

Amendment. In Paragraphs Two, Three, and Nine of his Amended Complaint, the Plaintiff re-

alleges his cruel and unusual punishment claims based on conditions he suffered while he was on

suicide watch for the first eleven days that he was at the Lake County Jail. The Court reaffirms

its conclusion in its original screening Opinion and Order that his allegations of being confined

for eleven days in a cell with fecal matter and urine on the walls and in a naked condition with

gusting air conditioning and being forced to sleep on a concrete slab without a mattress or

cushion state a valid Fourteenth Amendment conditions of confinement claim.

**F.      Placement on Administrative Segregation After Being Taken off Suicide Watch**

In Paragraph Ten of his Amended Complaint, the Plaintiff alleges that when he was

removed from suicide observation on September 6, 2008, he was "reclassified to administrative

segregation." (ECF No. 33 at 16.) According to the Amended Complaint, his "placement in ad.

seg. was not predicated on the safety of other inmates or disciplinary. Plaintiff was entitled to,

and denied any procedural due process and safeguards . . . . For the entire time Plaintiff was at the jail (10 months) he was in ad. seg." (ECF No. 33 at 16.)

The state cannot, consistent with the Due Process Clause of the Fourteenth Amendment, punish pre-trial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, maintaining jail security is an appropriate justification for placing restrictions on pretrial detainees. *Id.* at 540. The Supreme Court has observed:

> Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial. . . . [I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.

*Id.*

Because administrative segregation of a pretrial detainee for non-punitive reasons is not constitutionally prohibited punishment, it does not require the government to first provide due process protections. *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (stating that no due process is required if a pretrial detainee is placed in segregation "not as punishment but for managerial reasons"); *Zarnes v. Rhodes*, 64 F.3d 285, 291–92 (7th Cir. 1995) (holding that placing a pretrial detainee in administrative segregation for her protection and the protection of other inmates without due process did not violate the Constitution). In *Higgs*, the court gave examples of non-punitive, managerial reasons that would justify placing a pretrial detainee in segregation: when the detainee requires protection from other prisoners[1] or when the staff

---

[1] In his original Complaint, the Plaintiff asserted that Sheriff Dominguez's agents "use safety and security" as a reason for keeping him apart from the general population in continuing administrative segregation. (ECF No. 1 at 9.) In his Amended Complaint, the Plaintiff states "that the conditions he suffered were greatly influenced by

requires protection from the detainee's violent propensities; when a detainee is considered a suicide risk; or when a cell in the segregation ward is the only one vacant space when a detainee arrives at the jail. *Id.*, 286 F.3d at 438. "As long as the purpose was indeed a preventive rather than a punitive one, he would not be entitled to notice and a hearing." *Id.*

The Plaintiff is alleging that he was placed in administrative segregation, not for any bona fide managerial reason such as the protection of himself or others, but for punitive reasons. Consequently, the Plaintiff's due process rights are implicated by this alleged conduct, and the Court will permit the Plaintiff to proceed with his Fourteenth Amendment due process claim that jail officials improperly placed him in administrative segregation for ten months after they took him off suicide watch.

### G.      Conditions of Confinement on Administrative Segregation

In Paragraph Ten of his Amended Complaint, the Plaintiff alleges that "when taken as a whole," the conditions that he was subjected to on the administrative segregation unit amounted "to cruel and unusual punishment inflicted knowingly and intentionally." (ECF No. 33 at 18.) According to the Amended Complaint, these conditions included a large bright light in his cell that was never dimmed, cold air blowing through a vent into his cell for four months during the winter, and showering limited to three days a week. He also states that the cells in the unit in which he was housed were equipped with video cameras, but his claim that this violated his federally protected rights was dismissed from his original Complaint because it stated no claim

---

Plaintiff's prior employment at the Lake County Jail as a corrections officer." (ECF No. 33 at 21.) If jail officials believed the Plaintiff might be in danger from other inmates because of his previous role as a guard at the jail, that could be a proper "safety and security" determination supporting the Plaintiff's placement in administrative segregation.

upon which relief can be granted. (ECF No. 18 at 12.) To the extent the Plaintiff seeks to reassert a claim that being monitored in his cell by video cameras violated his constitutional rights, the Court reiterates that this allegation states no claim upon which relief can be granted.

In his original Complaint, the Plaintiff alleged "that he was only allowed to bathe on Monday, Wednesday, and Friday" while he was on the administrative segregation unit. (ECF No. 18 at 11.) In its original screening Opinion and Order, the Court denied him leave to proceed on this claim, noting that conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. (ECF No. 18 at 11 (citing *Adams v. Pate*, 445 F.2d 105, 108–09 (7th Cir. 1971).) The Court also noted that the Constitution does not require penal facilities to provide daily showers for prisoners. (ECF No. 18 at 11 (citing *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988).) The court reaffirms its determination in its original screening Opinion and Order that providing showers to inmates only three days a week states no claim upon which relief can be granted.

As for the Plaintiff's allegation that a large bright light illuminated his cell constantly, courts have observed that, under certain circumstances, constant illumination can rise to the level of a constitutional violation. *See, e.g., Brown v. James*, Civil No. 4:CV-0300631, 2009 WL 790124, at *8 (M.D. Pa. Mar. 18, 2009) (stating that, "[u]nder certain circumstances, requiring inmates to live in constant illumination may constitute a violation of the Eighth Amendment") (citing *Bacon v. Minner*, 229 Fed. Appx. 96, 99–100 (3d Cir. 2007)); *Dvorak v. Racine County Jail Sheriff*, No. 07-c-181, 2007 WL 1217693, at *6 (E.D. Wis. Apr. 23, 2007) (stating that an environment of constant illumination may violate the Eighth Amendment if it causes sleep deprivation or leads to other serious physical or mental health problems) (citing *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) & *King v. Frank*, 371 F. Supp. 2d 977, 984–85 (W.D. Wis.

2005)). The Plaintiff's allegations regarding constant bright lighting present a "nonnegligible probability," *Atkins v. City of Chi.*, — F.3d —, 2011 WL 206155, at *6 (7th Cir. Jan. 25, 2011), that his claim regarding the conditions of his confinement is valid, and the Court will permit the Plaintiff to go forward.

As for the Plaintiff's claim that the vent in his cell "gust[ed] cold air" into his cell for four months during the winter, this is similar to his claim that the cell in which he was housed on suicide watch had a gusting air conditioner. Giving the Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, the Court finds that the Plaintiff's allegation that cold air blowing into his cell for four months during the winter states a plausible claim for relief under the Due Process Clause of the Fourteenth Amendment.

## H.      Equal Protection

Although the Plaintiff does not cite the Equal Protection Clause of the Fourteenth Amendment in Paragraph Ten of his Amended Complaint, he asserts that inmates in his administrative segregation unit were treated differently depending upon whether they were held in one of the eighteen cells with video cameras. The Plaintiff states that he was housed on the fourth floor of the jail, which was used to house "inmates with special needs such as protective custody, medical, psychiatric, and disciplinary." (ECF No. 33 at 17.) He asserts that inmates housed in the eighteen cells with video cameras received fewer showers a week and had no access to the gymnasium, unlike other inmates on the floor who were not housed in these eighteen cells. Thus, the Plaintiff alleges that he was treated differently from other inmates on his own unit.

12

The Equal Protection Clause directs that all persons similarly situated should be treated alike. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Unequal treatment among inmates . . . is justified if it bears a rational relation to legitimate penal interests." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988) (citing *Hudson v. Palmer*, 468 U.S. 517, 522–23 (1983)). Giving the Plaintiff the benefit of favorable inferences regarding the treatment directed at him, the Court will permit the Plaintiff to proceed with his Fourteenth Amendment equal protection claim against Sheriff Dominguez.

## I.  Medical Claims

In his original Complaint, the Plaintiff alleged that he was denied adequate medical care for the eleven days that he was on suicide observation. In its original screening Opinion and Order, the Court stated as follows regarding the Plaintiff's medical claims:

> He asserts that he had open cuts on his ankles when he arrived at the jail on August 26, 2008, and that by August 29 these cuts had become infected. He stated that he "showed the [custody] staff the infected wounds and demanded immediate medical attention." (Compl. 5.) He says that officers responded by taking him to the shower, and then returning him to his cell where he was "told to lie on his stomach" and "force medicated with an injection to his buttocks." (*Id.*) Then, "not long after, the Dr. came and treated plaintiff by placing an ointment on plaintiff's wounds, but refused to place any coverings on the wounds" because the Plaintiff was on suicide watch. (*Id.*) The doctor also prescribed antibiotics for the infection.

(ECF No. 18 at 14.) In the original Complaint, the Plaintiff directed these allegations of being forcibly medicated against his will solely against Defendant Robert Malizzo, the owner of Medstaff. In its screening Opinion and Order, the Court dismissed Defendant Malizzo for lack of personal involvement. (ECF No. 18 at 15.) The Court dismissed the claims relating to the Plaintiff's open wounds and infection because a doctor saw and treated him for these wounds

13

(ECF No. 18 at 16), but "permit[ted] the Plaintiff to go forward with his claim against Defendant Dominguez regarding his back injury and having to lay on a concrete slab for eleven days" (*Id.* at 17).

In Paragraphs Four and Nine of his Amended Complaint, the Plaintiff re-alleges his medical treatment claims. The Court reaffirms its conclusion in its original screening Opinion and Order that the allegations relating to the Plaintiff's cuts state no claim upon which relief can be granted. However, giving him the benefit of the inferences to which he is entitled at this stage, the Court will again permit the Plaintiff to go forward with his claim regarding his back injury and having to lay on a concrete slab for eleven days.

In Paragraph Four of his Amended Complaint, the Plaintiff reasserts his forced medication claim. In his Amended Complaint, the Plaintiff identifies individual Defendants who are alleged to have been involved in the incident. The Plaintiff alleges that "Defendant T. Atkinson, an employee of Medstaff Inc., working as a licensed nurse at the Lake County Jail ordered and administered psychotropic medication to force medicate Plaintiff at the direction of Jail Lieutenant Defendant Ratajczak." (ECF No. 33 at 7.) State prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221–22 (1990). Although "[t]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will," the inmate must be "dangerous to himself or others and the treatment [must be] in the inmate's medical interest." *Id.* at 227. The Court will permit the Plaintiff to proceed with his Fourteenth Amendment claim that jail officials forcibly medicated him without due process of law.

**J.      Mail-Related Claims**

In the seventh claim of his original Complaint, the Plaintiff asserted that Mail Room Officers Stack and Wigsmoen withheld a publication, newspaper clippings, photographs, photocopies of photographs, and addresses from him based on jail policy, and that Officer Stack told him "that newspapers, books and magazine[s] must come from the publisher." (ECF No. 1 at 11.) He also alleged that jail policy did not allow him to receive magazines containing semi-nude photographs of women and that jail officials would not allow him to receive the addresses of "state agencies and medical licensing boards, which plaintiff's family sent to him at the jail." (*Id.* at 12). In its original screening Opinion and Order, the Court allowed the Plaintiff to proceed against the Sheriff in his official capacity on his allegations that jail policy precluded him from receiving a magazine with semi-nude photographs of women, photocopies of photographs, newspaper cuttings, and addresses of government officials and public agencies through the mail. In Paragraph Seven of his Amended Complaint, the Plaintiff re-alleges these claims. In Paragraph Eleven, he alleges that he was prohibited from receiving photocopies of legal documents and forms sent from his family. The Court reaffirms its conclusion in its original screening Opinion and Order that the Plaintiff's allegations that a jail policy precluded him from receiving a magazine with semi-nude photographs of women, photocopies of photographs, newspaper cuttings, addresses of government officials and agencies, and legal documents and forms through the mail states a claim upon which relief can be granted.

In his original Complaint, the Plaintiff alleged that Officers Stack and Wigsmoen retaliated against him for filing a grievance about the handling of his mail. The Court dismissed that claim because he had not named these officers as defendants. The Amended Complaint

names Officers Stack and Wigsmoen as Defendants and alleges that Officer Stack destroyed "a single page photocopy of female models depicting no nudity, no real or simulated sex acts nor pornographic images." (ECF No. 33 at 9.) He further alleges that, when he grieved this act, Officer Stack "began to retaliate and harass Plaintiff after he filed a grievance by further obstructing Plaintiff's mail by creating special rules that denied Plaintiff photocopies of anything including names, addresses, and phone numbers of public officers and agencies." (ECF No. 33 at 9.) He asserts that Officer Wigsmoen harassed him along with Officer Stack and "obstruct[ed]" the Plaintiff's mail. (ECF No. 33 at 10.) He also alleges that, when he threatened to sue Officer Wigsmoen, he wrote a conduct report against the Plaintiff "alleging that Plaintiff threatened him with great bodily harm." (ECF No. 33 at 10.)

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). To prevail on a First Amendment retaliation claim, a plaintiff must ultimately show (1) that he engaged in activity protected by the First Amendment; (2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) that there was a causal connection between the two (or in other words, the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action). *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Although there is a de minimis level of imposition with which the Constitution is not concerned, *Ingraham v. Wright*, 430 U.S. 651, 674 (1977), courts "'must take cognizance of the valid constitutional claims of prison inmates,'" *Bridges*, 557 F.3d at 547 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)). Filing an administrative grievance is

16

protected conduct, and retaliation against a prisoner for filing a grievance or complaining about treatment by officials may state a claim upon which relief can be granted. *Pearson v. Welborn*, 471 F.3d 732, 740 (7th Cir. 2006). The Court finds that the Plaintiff has stated a plausible claim of retaliation against Defendants Stack and Wigsmoen.

The Plaintiff alleges in Paragraph Seven of his Amended Complaint that Warden Freeman "initiated a permanent ban of Plaintiff's personal mail to or from any family members." (ECF No. 33 at 10–11.) He asserts that he was "corresponding with Kimberly Kelly, an inmate at the jail, through a third party outside the jail" but that "the mail of Inmate Kelly has been banned since May 2009." (ECF No. 33 at 11.) He suggests that jail officials cannot bar inmate-to-inmate correspondence "unless the jail can demonstrate a legitimate, bona fide, penological interest or that such correspondence actually threatens the safety and security of the jail." (ECF No. 33 at 11.) "'[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges or rights, a retraction justified by the considerations underlying our penal system.'" *Bridges*, 557 F.3d at 548 (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948))). A prisoner retains "'those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system.'" *Id.* Prison regulations that restrict a prisoner's First Amendment rights are permissible when they are reasonably related to legitimate penological interests, such as internal prison security. *Id.* Jail and prison officials may ban inmate-to-inmate correspondence for safety and security concerns. *Turner v. Safley*, 482 U.S. 78, 89, 91 (1987). The Plaintiff alleges that there were no safety or security concerns, and the Court finds that he has stated a plausible claim regarding the restriction on his correspondence to another inmate.

**K.  Grievances**

In Paragraph Eleven of his Amended Complaint, the Plaintiff alleges that Deputy Warden Malenshek upheld Officer Stack's actions in handling his mail because his attempts to grieve the harassment by Officers Stack and Wigsmoen were "found to have no merit by Defendant Malenshek, Deputy Warden, who refused to allow Plaintiff to exhaust his remedy." (ECF NO. 33 at 20.) The Plaintiff also asserts that "Defendant Malensek upheld that actions of Defendant Freeman" when he complained about not being allowed to correspond with a female prisoner at the jail. (ECF No. 33 at 11.)

This appears to be an attempt by the Plaintiff to reassert his claim that jail officials mishandled his grievances, which the Court dismissed in its original screening Opinion and Order. (ECF No. 18 at 23–24.) As this Court noted in that Opinion and Order, the Plaintiff's claim that Sheriff Dominguez's agents did not properly deal with his grievances states no claim upon which relief can be granted. A prisoner has no due process rights with respect to the prison grievance procedures; in other words, he has no liberty or property interests in procedural protections. *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001). A ruling against a prisoner on an administrative complaint does not cause or contribute to a constitutional violation. *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). That Deputy Warden Malenshek found the Plaintiff's grievance against Defendants Stack, Wigsmoen, and Freeman "to have no merit" states no claim upon which relief can be granted.

**L.  Defendants**

The Amended Complaint asserts claims against ten individual Defendants, which the

Court has analyzed. The only claim implicating Defendant Malenshek is the Plaintiff's grievance claims, and the Court is dismissing this claim. Accordingly, the Court will dismiss this Defendant.

In addition to the individual Defendants, the Plaintiff alleges that "Medstaff, Inc. is liable for the actions of its employees, including Defendant Atkinson, and its operations at the Lake County Jail" (ECF No. 33 at 8), and that "Edgewater Systems Inc. is liable for the actions of its employees, including Defendants Barragan, and Robbins, and its operations at the Lake County Jail" (*Id.* at 8–9). In his original Complaint, the Plaintiff sought to sue Medstaff President Robert Malizzo and Edgewater Systems President Danita Hughes under the same legal theory—i.e., that they are responsible and liable for the actions of their employees. In its initial screening Opinion and Order, the Court dismissed these Defendants, noting that "Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." (ECF No. 18 at 15 (quoting *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009) (citation omitted)).

A private actor may be understood to have acted under color of law if the plaintiff can establish (1) that the private individual and a state official reached an understanding to deprive the plaintiff of constitutional rights, and (2) that the private individual was a willful participant in joint activity with the state or its agents. *Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006); *see also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822–28 (7th Cir. 2009) (discussing standards for determining when a private entity acts under color of state law). From a review of the Amended Complaint, it is not clear what relationship existed between the Lake County Jail and MedStaff or between the Jail and Edgewater. However, the law is

settled that there is no respondeat superior liability under § 1983, and a private corporation is not vicariously liable under § 1983 for its employee's deprivations of another's civil rights. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002) (quotation marks and citations omitted). To maintain a viable § 1983 action against a private corporation, a plaintiff must demonstrate that a constitutional deprivation occurred as the result of an express policy or custom of the corporation. *Id.* The Plaintiff has not alleged that MedStaff or Edgewater employees at the Lake County Jail acted as they did based on policies or customs of Medstaff or Edgewater, and the facts as alleged do not suggest such an inference. Accordingly, Medstaff and Edgewater Systems cannot remain as Defendants based only on the actions of their employees because the doctrine of respondeat superior has no application to a § 1983 action.

In addition to the named Defendants, the Plaintiff "requests John Doe Defendants 12 through 22." (ECF No. 33 at 3.) However, the Plaintiff may not pursue claims against Doe Defendants until he has identified them because "[i]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted); *see also O'Brien v. Ind. Dep't of Corr.*, 495 F.3d 505, 508 (7th Cir. 2007) (reiterating that a prisoner cannot amend his civil rights complaint to name new individual defendants after the statute of limitations has run where those defendant were not on notice of the original complaint) (citing *Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996)). Accordingly, the Court will dismiss the Doe Defendants without prejudice. If the Plaintiff is able to identify these Defendants through discovery or by some other means, he may seek leave of court to add them as Defendants.

**CONCLUSION**

For the foregoing reasons, the Court:

(1)     GRANTS the Plaintiff leave file his Amended Complaint [ECF No. 33];

(2)     GRANTS the Plaintiff leave to proceed against Defendant Rogelio Dominguez and Benny Freeman in their official and individual capacity for damages, and against Defendants Robbins, Barragan, T. Atkinson, Ratajczak, Wigsmoen, and Stack in their individual capacities for damages on the Plaintiff's Fourth Amendment and Fourteenth Amendment claims that he was subjected to an improper perp walk (confrontation by media and the victim's family) when he was first escorted into the jail; his Fourth and Fourteenth Amendment claims regarding his placement in administrative segregation on suicide watch; his Fourth and Fourteenth Amendment claims regarding conditions of confinement on suicide watch for eleven days in a cell with fecal matter and urine on the walls, sleeping naked on a concrete slab without a mattress or cushion with gusting air conditioning, and with constant illumination by a bright light; his Fourteenth Amendment claim regarding his placement in administrative segregation after he was taken off suicide watch; his Fourteenth Amendment claim that the vent in his administrative segregation cell gusted cold air into his cell during the winter; his Fourteenth Amendment medical claim related to being required to sleep on a concrete slab without a mattress or cushion for eleven days despite having a back problem and his claim that he was forcibly medicated; his First and Fourteenth Amendment claims that jail policy precluded him from receiving a magazine with semi-nude photographs of women, newspaper cuttings, addresses of government officials and public agencies through the mail, and photocopies of legal

documents and forms; his claim under the Equal Protection Clause of the Fourteenth Amendment that he was treated differently than other inmates on the fourth floor of the jail; his First and Fourteenth Amendment claims regarding the ban against inmate-to-inmate correspondence; and his First and Fourteenth Amendment retaliation claims;

(3)     pursuant to 28 U.S.C. § 1915A(b)(1), DISMISSES all other claims and DISMISSES Defendants Edgewater Systems, Inc., Medstaff, Inc., J. Malenshek, and the John Doe Defendants;

(4)     ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Defendants Dominguez, Robbins, Barragan, T. Atkinson, Ratajczak, Wigsmoen, and Stack respond to the Amended Complaint as provided for in the Federal Rules of Civil Procedure;

(5)     LIFTS the stay imposed on June 22, 2010; and

(6)     AFFORDS the Defendants until March 31, 2011, with which to respond to the Amended Complaint.

SO ORDERED on February 28, 2011.

 s/ Theresa L. Springmann          
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION